## John D. Casey, Administrator, Appellee, v. Wabash Railroad Company and Chicago & Western Indiana Railroad Company, Appellants.

### Gen. No. 20,832.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed April 26, 1915.

### Statement of the Case.

Action brought by John D. Casey, administrator of the estate of Bernard J. Carroll, deceased, plaintiff, against the Wabash Railroad Company and Chicago & Western Indiana Railroad Company, defendants, in the Superior Court of Cook county.

Plaintiff recovered judgment of three thousand dollars against defendants for the death of Bernard J. Carroll, an employee of the Wabash Road, who was struck by a Wabash engine running under a contract of license on the tracks of the Chicago & Western Indiana Road near Twenty-Sixth street in Chicago. It was the custom for the Wabash Road to run a train for its employees, taking them in the morning to their various places of work along the line, and returning homeward with them in the evening. The railroad men call this train the "hurdy-gurdy."

Carroll was a switchman for the Wabash, stationed

at the yards at Landers, which is about an hour's ride from Twenty-Sixth street. The ''hurdy-gurdy'' would stop at Twenty-Sixth street for Carroll to board the train, and on the return trip would stop at this point to permit him to alight. There were six railroad tracks at this point running northerly and southerly, numbered consecutively from east to west, the most easterly track being No. 1 and the westerly No. 6. The work of elevating these tracks was in progress at the time of the accident. The east retaining wall, which was about twelve or fifteen feet high, was built, but the west wall was not yet constructed. The ''hurdy-gurdy'' on the return trip ran north on track No. 1, although one witness seemed to think it ran on track No. 3. There was no passenger station at the point near where the train stopped at Twenty-Sixth street, and employees wishing to board it would climb up the sloping side of the elevation on the west and cross over the intermediate tracks to the ''hurdy-gurdy,'' and in the evening when alighting the employees, in order to reach the street level, were obliged to walk westerly across the tracks and descend on the westerly incline of the track elevation.

It was about seven o'clock on the evening of January 10th, the time of the accident in question, when the ''hurdy-gurdy'' stopped near Twenty-Sixth street to allow Carroll and another workman, Reynolds, to alight. It was a dark night, described as ''a bad, cold night, with snow on the ground.'' With Reynolds leading, they walked in a westerly direction across the tracks. As the work of elevation was in progress the way was rough and uneven, covered with loose ties, rails, stone and other materials scattered between the tracks. Each of the men had a lantern and as Reynolds says, ''we picked our way across the tracks.'' An engine with no cars was coming from the south on track No. 5, running at a speed which some witnesses estimated

at eight or nine miles an hour, and another witness at twenty miles an hour. Reynolds says that before he reached this track he looked north and south but saw no headlight of any engine; that the first he knew of the approaching engine was when he was in the middle of the track upon which it was running, when he happened to raise his head and saw it only three or four feet from him; that he "hollered" to Carroll and just had time to step off the track when the engine went by. Carroll was struck and knocked to one side. The engine ran on some little distance before it was stopped. Carroll died within a few minutes thereafter. Reynolds testified that he heard no whistle blown or bell rung, while the testimony of the crew on the engine was that both whistle and bell were sounded. Carroll was a man forty-eight years of age, and his condition of health and strength was good and his sight and hearing normal. Reynolds says he had no conversation with Carroll after they got off the "hurdy-gurdy" and that he did not hear the engine approaching until it was close to him.

Zane, Morse & McKinney, for appellants; J. L. Minnis, of counsel.

John A. Bloomingston, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

## Abstract of the Decision.

1. Master and servant, § 152*—*when evidence sustains recovery.* Where in an action against a railway company, for the wrongful death of an employee, who had just alighted from a train used for the purpose of transporting employees to and from work, it was shown that the accident occurred at night, that decedent and his companion carried lanterns, that owing to work of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

elevàtion in progress the ground was rough and uneven and care was required in walking over it, that decedent was obliged to cross the tracks and that his companion saw no headlight and heard no warning signal before the accident, the evidence was *held* to support a verdict for plaintiff.

2. NEGLIGENCE, § 182*—*when evidence as to habits for care admissible.* In an action for the wrongful death of a railway employee who was struck by an engine while crossing defendant's tracks at night, evidence as to the habits of decedent for care and caution are admissible, there being no eyewitnesses, neither the engineer on the train nor decedent's companion, who had immediately preceded him across the tracks and barely escaped being struck, having actually seen the accident.

3. NEGLIGENCE, § 182*—*when not essential to show habits of decedent as to sobriety.* In an action for the death of an employee, where there were no eyewitnesses to the accident, evidence as to the habits of decedent for care and caution is not rendered incompetent because there was not also testimony as to habits of sobriety.

4. DEATH, § 67*—*when damages not excessive.* A verdict of three thousand dollars in an action for the wrongful death of a switchman, where the widow testified that her only source of income was what her husband made, is not excessive.

5. INSTRUCTIONS, § 151*—*when properly refused as embodied in other given.* Instructions requested by defendant as to the duty to exercise care toward decedent are properly refused where they cover essentially the same point included in the instructions given in behalf of the plaintiff.